# In the United States District Court for the Southern District of Georgia Waycross Division

| | |
|---|---|
| MELISSA JOYCE HYERS,<br><br>   Plaintiff,<br><br>v.<br><br>BACON COUNTY, GEORGIA, et al.,<br><br>   Defendants. | 5:24-CV-75 |

### ORDER

Before the Court is Defendants' motion to dismiss. Dkt. No. 14. The motion has been fully briefed and is ripe for review. Dkt. Nos. 14, 15. For the reasons set forth below, the motion to dismiss is **DENIED,** and Plaintiff is **ORDERED** to file an amended complaint.

### BACKGROUND[1]

This case arises out of Plaintiff Melissa Hyers's arrest and subsequent incarceration at the Bacon County jail. See generally Dkt. No. 13. On September 4, 2023, Plaintiff was visiting her family at her mother's then-residence. Id. ¶ 8. At some point that

---

[1] At this stage, the Court must "accept all factual allegations in a complaint as true[,] and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Additionally, the Court is required to liberally construe pro se complaints. Lapinski v. St. Croix Condo. Ass'n, Inc., 815 F. App'x 496, 497 (11th Cir. 2020).

day, Bacon County Sheriff's Deputies, Defendants Levin Batten and Hector Espinoza, arrived. Id. Plaintiff alleges that, upon arrival, Defendants Batten and Espinoza did not "identify themselves by name, job title, department, or otherwise," and Defendant Espinoza "promptly started using profanity." Id. ¶¶ 9-10. According to Plaintiff, she told Defendant Espinoza to be professional and to not use profanity. Id. ¶ 10. Plaintiff also informed Defendant Espinoza that he was being recorded[2] and he should turn on his body camera. Id. Plaintiff alleges that, in response, Defendant Espinoza said he was "a grown man and c[ould] speak how [he] want[ed]." Id. Defendant Batten was standing next to Defendant Espinoza during this interaction. Id. ¶ 11. Plaintiff asserts that based on Defendants Batten and Espinoza's language and demeanor, she was "in fear of bodily harm." Id. ¶ 12.

Shortly thereafter, Defendant Batten "rushed towards" Plaintiff and said that Plaintiff was "'going to jail.'" Id. ¶ 13. Defendant Batten "forcefully restrained" Plaintiff "face-forward against the front of a vehicle." Id. ¶ 15. Plaintiff attests that Defendants grabbed her so hard while handcuffing and restraining her that "circumferential bruising on her right wrist and other bruising immediately appeared" as well as fingerprint bruising on her right upper arm. Id. ¶¶ 16-17. According to Plaintiff, no law

---

[2] Plaintiff alleges she recorded Defendants with her cell phone. Dkt. No. 13 ¶ 14.

2

enforcement agent had an arrest warrant for Plaintiff or a warrant to obtain her cell phone. Id. ¶ 14.

While Plaintiff's mother attempted to take Plaintiff's phone from her, Defendants arrested her as well. Id. ¶ 18. As Plaintiff's mother was being restrained, Defendant Batten told Plaintiff to get in the patrol car or he would "'put her'" in it. Id. ¶ 19. Plaintiff alleges that she heard her mom, who was being hurt by Defendant Espinoza, yell for help, but Plaintiff complied with Defendant Batten's instructions to get in the car "out of fear for her person." Id. ¶ 20. After both Plaintiff and her mother were detained in separate patrol cars, Plaintiff contends that Defendant Batten called someone and stated, "'[w]e did have to fight both of them, Melissa and her mama.'" Id. ¶ 22. Batten allegedly also stated that both Plaintiff and her mom were going to the "'Bacon County Bed and Breakfast,'" meaning the Bacon County Sheriff's Office ("BCSO") jail.[3] According to the complaint, at no point did Defendants Batten or Espinoza call for a supervisor or the Bacon County Sheriff, Defendant Andy Batten,[4] in accordance with "procedure, policy, or standard before, during, or after their excessive force against Plaintiff." Id. ¶ 24.

---

[3] Ultimately, Plaintiff was released on bond after approximately twenty-four hours. Dkt. No. 13 ¶ 39.
[4] The Court refers to Defendant Deputy Levin Batten as "Defendant Batten" and Defendant Sheriff Andy Batten as "Sheriff Batten."

3

Plaintiff alleges that, after her arrest, she continued to "fear for her person and her life" due to her interactions with Defendants Batten and Espinoza. Id. ¶ 28. Plaintiff asserts that when she asked Defendants "'how badly [they] beat [her] mama,'" Defendant Batten replied "'[e]nough to get her arrested.'" Id. ¶¶ 26–27. Plaintiff states that she "did not know her mother's condition or location, if she was dead, alive, or how badly injured." Id. ¶ 28.

While escorting Plaintiff into the jail without incident, Defendant Levin Batten "snapped open" a baton or other weapon. Id. ¶ 29. At the jail, in the booking area, Plaintiff alleges that Alma-Bacon County Ambulance Service ("ABCAS") paramedics, Defendant Amanda Morgan and Defendant John Doe #2, ignored Plaintiff's "visible injuries and did not initiate an assessment of her."[5] Id. ¶ 30. That same day, Plaintiff's mother had a medical emergency in her housing unit. Id. ¶ 31. Plaintiff was present because she was assigned to the same unit. Id. Defendant Harvey Cole, a paramedic with ABCAS, then entered the unit "using profanity" and looking "visibly angry." Id. ¶ 32. Defendant Morgan and Defendant Kevin Kirkland, a detention officer, were present but "did nothing to intervene or deescalate." Id. ¶ 33. Plaintiff asserts that Defendant Cole said Plaintiff's mother was "'faking'"

---

[5] Plaintiff states that she made a jail nurse aware of her injuries at medical intake the next morning, September 5, 2023. Id. ¶ 38.

4

the medical emergency. Id. ¶ 32. Then, as Plaintiff was describing her mother's condition, Defendant Cole told Plaintiff to "'get the fuck out.'" Id. ¶ 34. Defendant Cole grabbed Plaintiff "by one upper arm while shoving her in the middle of her back with great force out the door of the housing room." Id. ¶ 35. "Defendants Cole and Morgan did not call for a supervisor or for Defendant White, the fire chief of ABCAS per procedure, policy, or standard before, during, or after Defendant Cole's excessive force against Plaintiff." Id. ¶ 37.

Plaintiff filed suit in the State Court of Bacon County, Georgia, on August 31, 2024, and Defendants removed the case to this Court shortly thereafter. Dkt. Nos. 1, 1-1 at 1. Plaintiff asserts a myriad of claims against Bacon County, Sheriff Batten, Deputy Batten, Deputy Espinoza, Detention Officer Kirkland, ABCAS Paramedic Cole, ABCAS EMT Morgan, then-Fire Chief and current ABCAS Paramedic Brent White, Bacon County Board of Commissioners Chairman Shane Taylor, the Bacon County Board of Commissioners, and John Does.[6]

On October 9, 2024, Defendants moved for a more definite statement of Plaintiff's claims. Dkt. No. 5. Plaintiff responded in opposition, dkt. no. 7, but the Court found Plaintiff's

---

[6] Plaintiff sues Sheriff Batten, as well as Defendants Batten, Espinoza, Kirkland, Cole, Morgan, White, Does, and Taylor in both their individual and official capacities.

complaint was a shotgun pleading and ordered her to file an amended complaint, dkt. no. 12. After Plaintiff filed her amended complaint, dkt. no. 13, Defendants moved to dismiss it, dkt. no. 14, and Plaintiff responded in opposition, dkt. no. 15.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). Additionally, the Court is required to liberally construe pro se complaints. Lapinski, 815 F. App'x at 497. Courts have "an obligation to determine whether the substance of the pro se pleading [is] cognizable" even if mistakenly labeled. Retic v. United States, 215 F. App'x 962, 964 (11th Cir. 2007). "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Roman v. Tyco Simplex Grinnell, 731 F. App'x 813, 815 (11th Cir. 2018) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)) (alterations adopted). But the Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a

6

presumption of truth.[7] Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

So viewed, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (emphasis added) (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing

---

[7] Plaintiff argues that she has "no duty to set out all of the relevant facts in [her] complaint." Dkt. No. 15 at 7 (citing Fed. R. Civ. P. 8; Conley v. Gibson, 355 U.S. 41, 47–48 (1967)). Because Plaintiff appears to rely on a pleading standard that is no longer utilized, the Court reiterates that, under the proper pleading standard, Plaintiff *is* required to set forth enough factual allegations "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

7

> so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

The purpose of Rules 8(a)(2) and 10(b) is to allow the defendant to discern what the plaintiff is claiming and frame a responsive pleading and to allow the court to determine whether the plaintiff has stated a claim for which relief can be granted. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015). Courts are not required to "sift through the facts presented and decide for [itself] which [are] material." Beckwith v. BellSouth Telecomms. Inc., 146 F. App'x 368, 372 (11th Cir. 2005) (quotation omitted).

Complaints that violate either Rule 8(a)(2) or Rule 10(b) are often disparagingly referred to as "shotgun pleadings." Weiland, 792 F.3d at 1320. The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." Id. at 1321.

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple

8

> defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Id. at 1321–23 (footnotes omitted).

Defendants argue that Plaintiff's complaint "makes it impossible for any Defendant to ascertain exactly which claims are being asserted against him and on which grounds." Dkt. No. 14 at 11. Specifically, Defendants allege that Plaintiff's complaint must be dismissed because it "indiscriminately incorporat[es] the same general set of factual allegations into multiple counts," id. at 5 (citation and quotation omitted), contains facts that are not relevant to any count, id. at 7, and does not separate causes of actions into separate counts, id. at 9.

In her response, Plaintiff argues that "there is enough information in the Amended Complaint for Defendants to formulate a response should they make a good faith effort or any effort at all." Dkt. No. 15 at 12. However, outside of making broad, conclusory statements, Plaintiff does not directly respond to Defendants' specific arguments.

Though Plaintiff corrected many of the deficiencies from her original complaint, as identified by the Court in its prior Order, dkt. no. 12, the Court finds Plaintiff's amended complaint, too,

is a shotgun pleading. First, Plaintiff's amended complaint "commits the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Weiland, 792 F.3d at 1322. "A complaint that requires the reader to 'speculate as to which factual allegations pertain to which count,' let alone speculate as to which factual allegations pertain to *any* count, has been found time and again to be a shotgun pleading in the Eleventh Circuit." Roether v. Georgia, No. 221-CV-083, 2022 WL 3908838, at *3 (S.D. Ga. Aug. 30, 2022), aff'd, No. 22-13731, 2024 WL 358121 (11th Cir. Jan. 31, 2024) (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997)) (emphasis in original). For instance, Plaintiff alleges that she was served meat as her meal at the BCSO jail even though she does not eat meat for religious reasons, that while at the jail she was "subjected to reading materials of Christian nature only" and a "chaplain of Christian beliefs only," and that "individuals who are allowed to provide religious services" at the jail "are hand-picked while others are denied." Dkt. No. 13 ¶¶ 48–50. However, Plaintiff makes no claim of religious discrimination or violation of her equal protection rights that would suggest how or why these factual allegations are relevant. See generally id. Moreover, Plaintiff alleges that Defendants "promptly made a claim with their insurance company, ACCG" after Plaintiff served them with Ante Litem notice, that

"Defendants' Counsel is their ACCG insurance lawyers," and that Defendant Bacon County recently renewed its liability insurance with ACCG and increased its deductible. Id. ¶¶ 54–55. Again, it is unclear how these factual allegations are relevant, if at all, to any of Plaintiff's claims.

Second, Plaintiff fails to separate all her various causes of actions into different counts. Weiland, 792 F.3d at 1322. For instance, in Count Three, Plaintiff attempts to assert a "personal participation claim[] for deliberate indifference under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983" against Defendants Espinoza and Batten. Dkt. No. 13 at 34. However, this count also reads as containing a supervisory liability claim against Defendant Bacon County for "arbitrary" arrest policies and practices and the training of its officers in violation of the Fourteenth Amendment. Id. ¶¶ 125, 134.

Moreover, in Count Six, Plaintiff asserts a claim of negligence against Defendant Sheriff Batten for "operat[ing] a jail that is unsafe for inmates and employees." Dkt. No. 13 ¶ 159. Though Plaintiff incorporates by reference facts to support that contention, id. ¶¶ 40–46, she also includes allegations that excessive force was used against her and that Sheriff Batten is aware such force constitutes a Fourth Amendment violation. Id. ¶¶ 154, 156. Such assertions give rise to a cause of action under § 1983, separate from Plaintiff's claim of negligence.

11

Furthermore, in this same count, Plaintiff alleges that Defendant Sheriff Batten is liable for failing to train and supervise his deputies and jail staff, which, again, aligns with a § 1983 cause of action independent of negligence.

Lastly, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some viable legal theory*." Fin. Sec. Assurance, Inc., 500 F.3d at 1282-83. Plaintiff's amended complaint fails to identify the legal basis upon which each count relies or assert sufficient facts to support her claim. For example, in Counts Seven and Eight, Plaintiff alleges that several Defendants breached "public and legal duties" and were the proximate cause of harm to Plaintiff "pursuant to O.C.G.A. § 51-1-6." Dkt. No. 13 ¶¶ 166, 172. However, § 51-1-6 does not impose a legal duty on Defendants. It "merely set[s] forth general principles of tort law." Reilly v. Alcan Aluminum Corp., 528 S.E.2d 238, 240 (Ga. 2000); see also Wells Fargo Bank, N.A. v. Jenkins, 744 S.E.2d 686, 688 (Ga. 2013) (citing O.C.G.A. § 51-1-6). So, too, Count Ten fails to identify a valid legal basis to support a cause of action for loss of wages. Dkt. No. 13 at 54. Plaintiff's general reference to "federal law" and Georgia's punitive damages statute—O.C.G.A. § 51-12-5.1, which does not provide "grounds for an independent cause of action"—does not satisfy this pleading

12

requirement. Massey v. Kelly, Inc., 742 F. Supp. 1156, 1158 (N.D. Ga. 1990).

The appropriate remedial measure for a shotgun pleading is generally to provide Plaintiff with a chance to replead her claim. See Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018). Defendant argues that because Plaintiff already had one chance to correct her pleading deficiencies the proper outcome is dismissal of Plaintiff's amended complaint. Dkt. No. 14 at 12; Arrington v. Green, 757 F. App'x 796, 798 (11th Cir. 2018) (affirming dismissal of complaint after plaintiff failed to correct the deficiencies identified by the district court when given the chance to re-plead his claims). Although Plaintiff's amended complaint still amounts to a shotgun pleading, the Court recognizes that Plaintiff corrected the deficiencies previously identified. See Dkt. No. 12 at 5–6 (describing the issues in Count One of Plaintiff's complaint and how to correct them). Furthermore, unlike the plaintiff in Vibe who failed to properly remedy his shotgun pleading issues and did not request leave to amend again, Plaintiff in this case *did* request leave to amend. 878 F.3d at 1296; Dkt. No. 15 at 14. Accordingly, Plaintiff shall be granted one more opportunity to amend her complaint in order to sufficiently identify the legal cause(s) of action, separate her

causes of action into their respective counts, and specify the relevant factual allegations that support each claim.[8]

## CONCLUSION

Defendants' motion to dismiss, dkt. no. 14, is **DENIED**. Plaintiff is **ORDERED** to file a second amended complaint within **twenty (20) days** of the date of this Order. Her failure to do so will result in dismissal of this action. Further, Plaintiff is warned that her failure to cure the deficiencies noted above will result in dismissal of this case.

**SO ORDERED** this 19th day of May, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[8] Defendants argue, and the Court rejects, that Plaintiff's first amended complaint is a shotgun pleading because she incorporates the same eighty-one paragraphs into almost every count. Dkt. No. 14 at 5. Plaintiff's "re-alleging of paragraphs [one] through [eighty-one] at the beginning of each count looks, at first glance, like the most common type of shotgun pleading." Weiland, 792 F.3d at 1324. "But it is not." Id.