# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

MELISSA JOYCE HYERS,

    Plaintiff,

    v.

BACON COUNTY, GEORGIA, et al.,

    Defendants.

5:24-CV-75

## ORDER

This action is before the Court on Defendants' motion to dismiss, dkt. no. 24. The motion has been fully briefed and is ripe for review. Dkt. Nos. 24, 29, 33. For the reasons set forth below, Defendants' motion to dismiss, dkt. no. 24, is **GRANTED in part** and **DENIED in part**.

## BACKGROUND[1]

This action is predicated upon the arrest and incarceration of Plaintiff Melissa Hyers. See generally Dkt. No. 23. According to the second amended complaint, Plaintiff was visiting family at

---

[1] At this stage, the Court must "accept all factual allegations in a complaint as true[,] and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Further, this Court must liberally construe pro se complaints. Lapinski v. St. Croix Condo. Ass'n, Inc., 815 F. App'x 496, 497 (11th Cir. 2020).

her mother's residence on September 4, 2023, when Bacon County Sheriff's Office ("BCSO") Deputies, Defendants Levin Batten and Hector Espinoza, arrived. Id. ¶ 8. Upon their arrival, Defendants Batten and Espinoza allegedly failed to identify themselves by name and did not state their employer, department affiliation, or job titles. Id. ¶ 9. Defendant Espinoza was purportedly using profanity despite being told that a child, Plaintiff's "baby nephew," was present. Id. ¶ 10. Plaintiff claims she asked Defendant Espinoza to stop using profanity, requested he turn on his body camera, and informed him that he was being recorded, but Defendant Espinoza allegedly responded that he was a "grown man" that can "speak how [he] want[s]." Id. Defendant Batten was standing beside Defendant Espinoza during this entire encounter, and Plaintiff maintains that she was already "in fear of bodily harm" at this time. Id. ¶ 11.

Next, Plaintiff contends that Defendant Batten quickly rushed toward her and declared that she was "going to jail," even though neither Batten and Espinoza nor any law enforcement agency had a warrant for Plaintiff's arrest. Id. ¶¶ 13-14. Defendant Batten proceeded to "forcefully restrain" Plaintiff. Id. ¶ 15. Specifically, Plaintiff states that Defendant Batten placed her in handcuffs while pressing her "face-forward against the front of a vehicle" in which Plaintiff's minor nephew was sitting in his car seat. Id. ¶ 16. Plaintiff further avers Defendant Batten grabbed

her hands and wrist with such force that she was left with bruising, some of which "immediately appeared." Id. ¶ 16. Plaintiff also claims the arrest left her with "fingerprint bruising" and a scratch on her right arm.[2] Id. ¶ 17.

---

[2] Plaintiff also includes in the second amended complaint various extrinsic "figures" to support her claims, including a YouTube hyperlink to footage of the initial arrest recorded by Plaintiff, alongside a photo of the bruising to Plaintiff's upper arm and a BCSO website screenshot listing the Chaplain, both of which appear in the pleading itself. Dkt. No. 23 ¶¶ 88, 98, 101, 114, 127. In certain circumstances, Courts analyzing a motion to dismiss use the "incorporation-by-reference" doctrine to allow consideration of evidence "extrinsic to the complaint itself." Lee v. Gee, 722 F. Supp. 3d 1372, 1376 (M.D. Ga. 2024), appeal dismissed, No. 24-11040-D, 2024 WL 3289607 (11th Cir. May 30, 2024). Under this doctrine, a document attached to the pleadings as an exhibit may be considered without converting a motion to dismiss into a motion for summary judgment if the document "is central to the plaintiff's claim and the authenticity of the document is not challenged." Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007). There is no indication that Defendants challenge the authenticity of the videos or photo "figures" referenced or included in Plaintiff's second amended complaint. While these are not physically attached to the complaint, Plaintiff refers to the figures within the complaint, and the references or figures themselves are embedded in her claims. Johnson v. Belcher, 564 F. Supp. 3d 1334, 1341 (N.D. Ga. 2021). Thus, the Court considers the figures provided by Plaintiff for the purpose of ruling on the present motion to dismiss, and factual allegations will be viewed as true to the extent they are not contradicted by the figures. Id. at 1340-41; see also Kass v. New York, 864 F.3d 200, 206 (2d Cir. 2017) ("[W]hen the record includes a video that the parties concede is authentic and accurate, . . . [the court] view[s] the allegations of the complaint as true only 'to the extent that they are not contradicted by video evidence.'" (quoting Garcia v. Does, 779 F.3d 84, 91 (2d Cir. 2015))). Also embedded in Plaintiff's complaint is a link to bodycam footage allegedly showing use of force by Defendant Levin Batten. The Court has not viewed and does not consider this video when deciding the pending motion. Per this Court's administrative procedures, when a filing cannot be uploaded to ECF, the filer must submit the information via a CD-ROM or flash drive to the Clerk's Office. See Rule I.A.2,

During this encounter, Plaintiff's mother was also arrested by Defendants when she attempted to retrieve the cell phone that Plaintiff had been using to record the Deputies. Id. ¶ 18. While Defendants restrained Plaintiff's mother, Defendant Batten told Plaintiff that he would "put her" in the patrol vehicle if she did not get in, and Plaintiff complied "out of fear for her person"— even though Plaintiff, while she entered the vehicle, allegedly heard her mother yell for help because she was being hurt by Defendant Espinoza. Id. ¶¶ 19-20. Plaintiff alleges that once she and her mother were detained in separate police cars, Defendant Batten called someone on the phone, telling the other line that Defendants "had to fight" Plaintiff and her mother but Plaintiff was going to the "Bacon County Bed and Breakfast"—a reference to the Bacon County jail. Id. ¶ 22. Plaintiff states that Defendants never called for a supervisor or the Bacon County Sheriff, Defendant Andy Batten, which they were allegedly obligated to do under applicable "procedure[s], polic[ies], or standard[s]" governing use of excessive force. Id. ¶ 24.

Plaintiff alleges that she continued fearing for her person after her initial interactions with Defendants Batten and Espinoza. Id. ¶ 28. While in the patrol vehicle, Plaintiff

---

Admin. P. for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means (S.D. Ga. Dec. 1, 2016), available at https://www.gasd.uscourts.gov/sites/gasd/files/RevisedAdminProce duresECF-Dec2-2016.pdf.  Plaintiff did not comply with this rule.

purportedly asked Defendant Batten how badly the Deputies beat her
mother, to which Batten allegedly replied, "Enough to get her
arrested." Id. ¶¶ 26–27. This left Plaintiff without information
on her mother's condition, location, or injuries, and Plaintiff
states that she did not know whether her mother was alive. Id.
¶ 28. Plaintiff contends that while Defendant Batten escorted
Plaintiff into the jail, he snapped open what Plaintiff believed
could have been a handgun. Id. ¶ 29. Once Plaintiff arrived in the
booking area of the jail, she encountered paramedics from the Alma-
Bacon County Ambulance Service ("ABCAS"), including Defendants
Amanda Morgan and John Doe #2, both of whom allegedly ignored and
failed to assess Plaintiff's "visible injuries." Id. ¶ 30.

Plaintiff was assigned to the same housing unit as her mother,
and she was present when staff had to summon the paramedics to
tend to a medical emergency Plaintiff's mother experienced later
that day. Id. ¶ 30. When one such ABCAS paramedic, Defendant Harvey
Cole, arrived at the housing unit, he was "using profanity," looked
"visibly angry," and accused Plaintiff's mother of "faking" the
emergency. Id. ¶ 32. Defendant Morgan and Defendant Kevin Kirkland,
a detention officer, were both present, but neither tried to
deescalate Defendant Cole. Id. ¶ 33. And, when Plaintiff attempted
to describe her mother's health condition to medical personnel,
Defendant Cole allegedly told Plaintiff to get out of the room,
grabbing Plaintiff's upper arm and shoving her forcefully out the

door. Id. ¶¶ 34–35. While Plaintiff claims that other women in the housing unit directed Plaintiff to stand behind them so she would be safer, "Defendants Cole and Morgan did not call for a supervisor or for Defendant White, the fire chief of ABCAS," per procedure, at any point "before, during, or after Defendant Cole's excessive force against Plaintiff." Id. ¶ 37. The next morning, on September 5, 2023, Plaintiff informed John Doe #1, a nurse at the jail, of the injuries she had sustained throughout her arrest and detention. Id. ¶ 38.

Plaintiff was detained at the jail for about twenty-four hours before she was released on bond. Id. ¶ 39. During this period, Plaintiff claims she experienced a myriad of poor conditions in the jail, including a lack of functional cell lighting, unclean facilities, and a blood-stained mattress. Id. ¶¶ 40–44. And Plaintiff asserts that she was strip-searched in a laundry room with the door to the hallway partially open, giving her no assurance that a male orderly or other hallway passerby did not see her in a state of undress. Id. ¶ 51. Finally, Plaintiff alleges that even though jail staff knew she did not eat meat for religious reasons, staff nevertheless served her meat. Id. ¶¶ 48, 50. At the same time, she was subjected to a chaplain of Christian beliefs and had access to only Christian reading materials with no alternative provided. Id. ¶ 49.

Plaintiff, acting *pro se*, sued in the State Court of Bacon County on August 31, 2024 to challenge the events she experienced during her arrest and detention. Dkt. No. 1-1. Defendants promptly removed to this Court, dkt. nos. 1, 1-1 at 1, then moved for a more definite statement of Plaintiff's claims, dkt. no. 5. In response, the Court ordered Plaintiff to file an amended complaint, concluding that her original complaint was a shotgun pleading. Dkt. No. 12. Once Plaintiff filed her first amended complaint, dkt. no. 13, Defendants moved to dismiss, dkt. no. 14, which the Court denied, concluding that Plaintiff's first amended complaint was still a shotgun pleading and ordering her to, again, amend her pleading, dkt. no. 22. Plaintiff once more amended her complaint. Dkt. No. 23.

In the second amended complaint—the one now under review—Plaintiff pursues a mix of fifteen state and federal claims against an assortment of individuals and entities allegedly involved in her arrest and detention. <u>See generally</u> <u>id.</u> More specifically, Plaintiff names as Defendants Sheriff Batten, Deputies Batten and Espinoza, Detention Officer Kirkland, ABCAS Paramedic Cole, ABCAS EMT Morgan, ABCAS fire chief White, and Bacon County Board of Commissioners Chairman Shane Taylor, whom she sues in their individual and official capacities.[3] <u>Id.</u> Additionally, Plaintiff

---

[3] Ordinarily, Eleventh Amendment immunity would be relevant to whether a plaintiff can pursue a suit against a state employee or

asserts a handful of claims against both Bacon County and the Bacon County Board of Commissioners ("the Board").[4] Id. Defendants once more move to dismiss the second amended complaint as a shotgun pleading, dkt. no. 24, and Plaintiff opposes the motion, dkt. no. 29.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." In determining whether a

---

official in their official capacity. See, e.g., Wentworth v. Beauchamp, No. 2:21-CV-55, 2021 WL 4169785, at *2 (S.D. Ga. Aug. 18, 2021), report and recommendation adopted, 2021 WL 4166330 (Sept. 13, 2021). This is true even when not raised by the parties, as Eleventh Amendment immunity has been characterized as a "jurisdictional issue" that may be raised sua sponte at any point. Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 227 (4th Cir. 1997). However, state defendants waive this jurisdictional immunity by removing the case to federal court, retaining the ability to raise sovereign immunity as a defense. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 619-21 (2002); Meyers ex rel. Benzing v. Texas, 454 F.3d 503, 504 (5th Cir. 2006). Here, jurisdictional immunity was waived when Defendants removed to this Court, and Defendants have not otherwise raised the immunity issue as a defense. Dkt. Nos. 1, 24. As such, this Court's holding is limited to whether Plaintiff has met federal pleading requirements for her claims without any pronouncement as to whether sovereign immunity applies in the present action.

[4] Plaintiff also names as Defendants "John Doe #1" and "John Doe #2" identified in the second amended complaint. Dkt. No. 23. However, Plaintiff does not assert a claim against either John Doe. Thus, while the Eleventh Circuit does allow for "fictitious party pleading" under certain circumstances, this Court need not address whether those circumstances are met, and the Court **DISMISSES** John Doe #1 and John Doe #2 as Defendants in this action. See, e.g., Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (describing the circumstances under which the Eleventh Circuit allows for "fictitious party pleading").

complaint surpasses this threshold, a court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1348-49 (11th Cir. 2016) (citing Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP, 634 F.3d 1352, 1359 (11th Cir. 2011)). However, legal conclusions are not entitled to the same presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). In other words, the Court should not accept allegations as true if they merely recite the elements of a claim and declare that they are met. Id. Instead, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

To analyze whether a complaint can surpass a motion to dismiss for failure to state a claim, the core inquiry is whether the complaint contains sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This means that the complaint must contain sufficient factual information to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this is not a probability requirement, a complaint must give rise to "'more

than a sheer possibility' that the plaintiff's allegations are true."[5] Gissendaner v. Comm'r, 803 F.3d 565, 568 (11th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

In the context of a *pro se* complaint, the pleading still must include enough factual allegations to "raise a right to relief above the speculative level." Saunders v. Duke, 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted). "[A] *pro se* pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). But, at the same time, a *pro se* complaint is "held to a less stringent standard than a pleading drafted by an attorney" and must be liberally construed. Id.; see also Lapinski, 815 F. App'x at 497.

## DISCUSSION

Defendants argue that Plaintiff's second amended complaint should be dismissed in its entirety for failure to state *any* claim upon which relief could be granted. Dkt. No. 24 at 11–12. In

---

[5] In her response brief, Plaintiff maintains that her complaint can be dismissed only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Dkt. No. 29 at 4 (citing Haines v. Kerner, 404 U.S. 521, 596 (1972)). But, as previously noted in this Court's May 19, 2025 Order, dkt. no. 22 at 7 n.7, Plaintiff relies on an outdated pleading standard that is no longer utilized in federal courts. Rather, Plaintiff is required to set forth enough factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

response, Plaintiff maintains that *all* her claims are sufficiently pled.[6] Dkt. No. 29 at 4–7. The correct disposition is somewhere in between.

Federal pleading requirements mandate dismissal of some—but not *all*—of Plaintiff's claims. Some claims, especially those deficient shotgun claims previously identified by the Court that have not been remedied by Plaintiff (even with two attempts to cure the problem), can be properly dismissed. See Dkt. No. 22 at 9–14 (this Court's Order identifying elements of shotgun claims in the first amended complaint). However, dismissal of some claims does not necessarily doom the entire complaint. See Albert v. Lincoln Bancorp, No. 1:23-CV-04409-SCJ, 2024 WL 6861939, at *1 (N.D. Ga. Apr. 9, 2024) (dismissing some claims, rather than the

---

[6] Aside from pleading requirements, Plaintiff contends that the Court should dismiss Defendants' motion due to "procedural service deficiencies." Dkt. No. 29 at 3. There, Plaintiff claims that Defendants first erroneously served notice of their motion on Plaintiff's mother, then attempted to correct the error by conducting electronic service via email pursuant to the parties' prior Rule 26 conference agreeing to electronic service. Id. However, the document from that Rule 26 conference had been terminated by the Court before Defendants attempted to perfect electronic service. Id. In response, Defendants note that Plaintiff signed a second Rule 26(f) report agreeing to electronic service on the same day she objected to service of this motion's notice, further highlighting evidence in Plaintiff's response showing that she did, in fact, receive notice of the present motion. Dkt. No. 33 at 2. The core purpose of service is to give the affected party proper notice. See TEC-Serv, LLC v. Crabb, No. 11-62040-CIV, 2012 WL 12549912, at *2 (S.D. Fla. Dec. 6, 2012). The Court concludes Plaintiff had notice and responded with specificity to Defendants' motion, and any potential error is harmless.

complaint in its entirety, as shotgun claims while allowing the remaining to proceed past the motion to dismiss stage), appeal dismissed, No. 24-13039, 2024 WL 4541390 (11th Cir. Oct. 22, 2024). Other claims must be dismissed because they do not rest on a viable legal theory. Fin. Sec. Assurance, 500 F.3d at 1282–83. And other claims simply fall short of the "plausibility" requirement. Iqbal, 556 U.S. at 678. All things considered—including a liberal construction and Plaintiff's *pro se* status—the Court gleans seven viable claims from Plaintiff's second amended complaint. Pinson v. JPMorgan Chase Bank, Nat'l Ass'n, 942 F.3d 1200, 1207-08 (11th Cir. 2019) (considering plaintiff's *pro se* complaint on the merits despite it displaying some characteristics of a shotgun pleading because complaint nevertheless gave defendant adequate notice of various claims and their legal and factual grounds); see also Torres v. Mia.-Dade Cnty., Fla., 734 F. App'x 688, 691 (11th Cir. 2018)(citing 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1286 (3d ed. 2004) ("[T]echnical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized by the district court to determine if any legally cognizable claim can be found within the four corners of the plaintiff's document.")).

## I.    Plaintiff's Shotgun Claims

Defendants' motion to dismiss is based on Plaintiff's alleged failure to comply with Federal Rules of Civil Procedure 8 and 10.

Dkt. No. 24 at 1. Alongside Federal Rule of Civil Procedure 8(a)(2)'s requirement that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 10(b) outlines the mechanics of such a pleading, providing as follows:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Under these rules, a court need not rummage through a complaint's various factual allegations to discern which facts, if any, are materially related to a plaintiff's claims. Beckwith v. BellSouth Telecommc'ns Inc., 146 F. App'x 368, 372 (11th Cir. 2005). Instead, the party pursuing a claim has the responsibility to frame its pleading in a manner that gives defendants adequate notice of the claims against it, allows defendants to frame a responsive pleading, and enables the Court to discern whether the claims can surpass a motion to dismiss for failure to state a claim. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015). A complaint that fails to serve this purpose earns the title "shotgun pleading." Id.

There are four primary types of shotgun pleadings under Eleventh Circuit caselaw:

The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire. The next most common type, at least as far as [Eleventh Circuit] published opinions on the subject reflect, is a complaint that does not commit the mortal sin of realleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

Id. at 1321–23 (footnotes omitted).

Defendants argue that Plaintiff's entire complaint should be dismissed as an impermissible shotgun pleading. See generally Dkt. No. 24. Defendants first reason that the second amended complaint is "replete with conclusory, vague, and immaterial facts not connected to any cause of action," claiming that Plaintiff "indiscriminately" incorporates the same facts into each claim and includes factual allegations that are not relevant to any of her fifteen claims. Id. at 9. Defendants then argue that Plaintiff "fails to separate different causes of action into separate counts." Id. at 5, 9.

Plaintiff's response focuses primarily on proper notice and her status as a *pro se* litigant. See generally Dkt. No. 29. Plaintiff claims that her allegations clarify the facts of the case and the reasons why each Defendant is named in the complaint, giving Defendants sufficient information to form a responsive pleading. Id. at 5. Plaintiff further argues that her second amended complaint should be upheld because of Eleventh Circuit caselaw's "favorable" approach to analyzing *pro se* pleadings that ensures "procedural technicalities [do not] obstruct access to justice for *pro se* litigants." Id. at 5–6. However, Plaintiff does not respond with specificity to Defendants' arguments regarding alleged deficiencies in the second amended complaint. See generally id.; see also Dkt. No. 33 at 3 (listing the "core defects" that Plaintiff allegedly failed to address in her response).

While Plaintiff has corrected many of the deficiencies contained in her original complaint such that some of her present claims are sufficiently pled, she nonetheless did not fix *all* the shotgun pleading characteristics contained in the first amended complaint, dkt. no. 13. See Dkt. No. 22 (this Court's prior Order deeming Plaintiff's first amended complaint a shotgun pleading). Additionally, the second amended complaint is longer than it needs to be. However, Plaintiff provides sufficient guidance on the bases for many of her claims such that the Court does not have to merely

"speculate" as to which facts relate to which claim. See, e.g., Dkt. No. 23 ¶ 82 (noting that the facts relevant to Count One involve Defendant Espinoza's behavior at the arrest scene); id. ¶ 115 (clarifying that Count Four pertains to Defendant Batten detaining Plaintiff while Defendant Espinoza attempted to take her cell phone); see also Roether v. Georgia, No. 221-CV-083, 2022 WL 3908838, at *3 (S.D. Ga. Aug. 30, 2022) ("A complaint that requires the reader to 'speculate as to which factual allegations pertain to which count,' let alone speculate as to which factual allegations pertain to any count, has been found time and again to be a shotgun pleading in the Eleventh Circuit." (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997))), aff'd, No. 22-13731, 2024 WL 358121 (11th Cir. Jan. 31, 2024).

In light of these bases embedded in various Counts, in combination with the fact that many of Plaintiff's factual allegations surrounding the arrest and detention follow a rough chronological organization split into subsections based on their focus, Plaintiff does not place on Defendants the burdensome task of "parsing through all eighty-one [facts], fifteen times." Dkt. No. 24 at 7. Rather, she realleges the factual allegations and provides a brief overview of the relevant conduct by the relevant party to guide Defendants, and the Court, to the facts pertaining to that claim. Dkt. No. 23; see also Dkt. No. 22 at 14 n.8 (explaining why Plaintiff's "re-alleging of paragraphs [one]

through [eighty-one]" is not a shotgun pleading, though it may look like it (citing Weiland, 792 F.3d at 1324)).[7] In short, Plaintiff provides enough guidance to escape dismissal of the second amended complaint in its entirety as a shotgun pleading—even if some individual claims still fail.

Moving to the specifics of the second amended complaint, Counts Eleven and Thirteen should be dismissed on shotgun pleading grounds because Plaintiff still fails to separate all her causes of action into separate counts. Weiland, 792 F.3d at 1322. First, Plaintiff asserts in Count Eleven a "personal participation" claim for "deliberate indifference" under 42 U.S.C. § 1983 against both Defendant Batten and Defendant Espinoza. Dkt. No. 23 ¶¶ 156–60. But then, in the same Count, Plaintiff cites both the due process and equal protection clauses of the Fourteenth Amendment, and she

---

[7] This Court's May 2025 order, dkt. no. 22, also notes that Plaintiff's first amended complaint contained multiple "irrelevant" factual allegations, including reference to the jail's failure to accommodate her religion without any associated religious discrimination claim, and allegations regarding insurance filings with no clear connections to any cause of action. Id. at 10–11. Plaintiff remedied the former by including a religious discrimination claim in her second amended complaint. Dkt. No. 23 ¶¶ 124–30. While she still includes the seemingly irrelevant facts about Bacon County's insurance structure, id. ¶¶ 54–55, the inclusion of "too many" facts does not mandate dismissal of the claims of which Defendants have adequate notice. See, e.g., Pinson, 942 F.3d at 1208 (refusing to outright dismiss plaintiff's entire *pro se* complaint that was "perhaps longer than it need[ed] to be," because complaint "did not contain endless irrelevancies" and served its purpose of giving defendants notice of each claim and its factual basis).

mentions the use of unjustified force. Id. Because there are separate and distinct requirements to state a claim based on alleged violations of each of these constitutional clauses, and the second amended complaint lists all three potential causes of action in a single count, it begs the question of how Defendants— or the Court—can determine what test is applicable—let alone discern whether that test's requirements are met. Compare Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (describing the unique requirements for claims based on alleged Fourteenth Amendment procedural due process violations (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003))), with Mahoney v. Owens, 818 F. App'x 894, 899 (11th Cir. 2020) (outlining the requirements to state an equal protection claim (quoting Draper v. Reynolds, 369 F.3d 1270, 1278 n.14 (11th Cir. 2004))). Thus, Count Eleven fails to state a claim.

In Count Thirteen, Plaintiff brings a negligence claim against Sheriff Batten alleging the Sheriff operated an unsafe jail. Dkt. No. 23 ¶¶ 173-80. Nearly identical allegations appeared in Count Six of Plaintiff's first amended complaint, which this Court deemed deficient because Plaintiff also included allegations of excessive force and failure to properly supervise, which align with both a Section 1983 cause of action and a negligence claim. Dkt. No. 22 at 11-12. Because Plaintiff failed to remedy this issue upon filing her second amended complaint, it is proper to dismiss

this claim on shotgun pleading grounds. Accordingly, Defendants' motion to dismiss is **GRANTED** as to Counts Eleven and Thirteen. See Lincoln Bancorp, 2024 WL 6861939, at *1.

## II. Plaintiff's Claims Lacking Any Legal Basis

To surpass a motion to dismiss, a claim must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some viable legal theory*." Fin. Sec. Assurance, Inc., 500 F.3d at 1282-83 (emphasis added). Four of Plaintiff's claims do not have such a basis. For example, Plaintiff, in Counts Seven and Ten, brings claims for "Loss of Wages" against Defendant Batten, Defendant Espinoza, and Defendant Cole. Dkt. No. 23 ¶¶ 131-38, 147-55. There, like in the first amended complaint, Plaintiff references "federal law" at large and Georgia's punitive damages statute—O.C.G.A. § 51-12-5.1. Id. ¶¶ 132-38. But the reference to federal law is a mere generality that does not identify an actual legal basis, and O.C.G.A. § 51-12-5.1 does not provide "grounds for an independent cause of action" for "loss of wages." Massey v. Kelly, Inc., 742 F. Supp. 1156, 1158 (N.D. Ga. 1990).

In addition, Counts Fourteen and Fifteen are both based on alleged "breach[es] of public and legal duties" that Plaintiff claims form a basis of liability under O.C.G.A. § 51-1-6. Dkt. No. 23 ¶¶ 181-95. But O.C.G.A. § 51-1-6 does not seek to impose a legal duty on Defendants. Rather, it provides a general description of

tort law principles applicable in Georgia. See Dkt. No. 22 at 12 (highlighting the lack of legal basis in near-identical "breach of public and legal duties" claims in Plaintiff's first amended complaint (citing Reilly v. Alcan Aluminum Corp., 528 S.E.2d 238, 240 (Ga. 2000); Wells Fargo Bank, N.A. v. Jenkins, 744 S.E.2d 686, 688 (Ga. 2013))). As such, Counts Fourteen and Fifteen similarly fall short of the pleading requirement of a viable legal theory underlying a claim. Fin. Sec. Assurance, Inc., 500 F.3d at 1282-83. Accordingly, Defendants' motion to dismiss is **GRANTED** as to Counts Seven, Ten, Fourteen, and Fifteen.

### III. Plaintiff's Remaining Claims

Having disposed of Plaintiff's shotgun claims, as well as Plaintiff's claims that lack a sufficient legal basis, the Court will now analyze Plaintiff's remaining claims to determine if they have sufficient factual support to set forth a "plausible claim for relief." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### A. Plaintiff's Remaining Claims Under 42 U.S.C. § 1983

"It is well settled that the[] pleading standards [set forth in Twombly and Iqbal] apply in all civil cases and that § 1983 complaints need not satisfy any heightened pleading standard." Rogers v. Atlanta, 214 F. Supp. 3d 1314, 1318 (N.D. Ga. 2016) (citing Hoefling v. Mia., 811 F.3d 1271, 1276-77 (11th Cir. 2016); Leatherman v. Tarrant Cnty. Narcotics & Intel. & Coordination Unit,

507 U.S. 163, 168 (1993)), <u>appeal dismissed</u>, No. 24-11040-D, 2024 WL 3289607 (11th Cir. May 30, 2024). As a result, Plaintiff's remaining Section 1983 claims (Count One, Count Three, and Count Twelve) need satisfy only ordinary—not heightened—pleading standards. <u>Id.</u> For the following reasons, the Court **DISMISSES** Count One, but Counts Three and Twelve have sufficient factual support to rise above the speculative level and withstand Defendants' motion to dismiss.

### i. Counts One and Three: Fourth Amendment Claims

In Counts One and Three, Plaintiff claims Defendant Batten and Defendant Espinoza violated her rights under the Fourth Amendment to the United States Constitution. Dkt. No. 23 ¶¶ 82–92, 102–14. Specifically, in Count One, Plaintiff focuses on Defendant Espinoza's "use of profanity" and "agitated body language" at the arrest scene, which Plaintiff alleges amounted to excessive force and caused her to experience emotional distress. <u>Id.</u> ¶ 82. On the other hand, Count Three involves Defendant Batten's alleged "unlawful seizure" of Plaintiff and is also focused on the initial arrest scene. <u>Id.</u> ¶ 102; <u>see also id.</u> ¶¶ 8–29 (factual allegations relevant to both claims based on the description of relevant conduct given by Plaintiff in paragraphs eighty-two and 102). The substance of Counts One and Three challenges the level of force used by Defendants Espinoza and Batten. <u>Id.</u> ¶ 88, 109.

Plaintiff seeks to hold Defendants Espinoza and Batten liable under 42 U.S.C. § 1983.[8] Id. ¶¶ 82–92, 102–14. "To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law." Douglas v. Ammons, No. 4:24-CV-70-CDL-AGH, 2024 WL 3796171, at *1 (M.D. Ga. Aug. 13, 2024) (citing Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1581 (11th Cir. 1995)). While Plaintiff, in Counts One and Three, alleges that Defendants were acting under the color of state law in their capacities as state employees, whether either Count survives dismissal hinges on whether Plaintiff plausibly alleged a violation of her Fourth Amendment rights. Id. ¶¶ 85, 106.

The Fourth Amendment provides individuals with the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. This protection against unreasonable seizures encompasses the right to "be free from

---

[8] Plaintiff does not list 42 U.S.C. § 1983 in the caption for Count Three, but the substantive allegations reveal that Plaintiff intends Count Three to be a Section 1983 claim. See Dkt. No. 112 (claiming Defendant Batten's actions violated the protections afforded by § 1983); see also Torres, 734 F. App'x at 691 ("Liberal construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a pro se party's complaint and focus on the content and substance of the allegations." (citing Means v. Alabama, 209 F.3d 1241, 1242 (11th Cir. 2000))).

excessive force during the course of a criminal apprehension." Corbitt v. Vickers, 929 F.3d 1304, 1315 (11th Cir. 2019) (quoting Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009)). To establish a Fourth Amendment claim, a plaintiff must allege (1) that a seizure occurred, and (2) that the force used to carry out the seizure was unreasonable. Id. (quoting Troupe v. Sarasota Cnty., 419 F.3d 1160, 1166 (11th Cir. 2005)).

As to the first element, the Eleventh Circuit has upheld the dismissal of Section 1983 claims where a plaintiff failed to allege facts to show defendants were personally involved in the alleged constitutional violations, further requiring proof of an "affirmative causal connection" between the official's acts or omissions and the alleged constitutional deprivation. Belcher, 564 F. Supp. 3d at 1342–43 (citing O'Kelley v. Craig, 781 F. App'x 888, 895 (11th Cir. 2019) (per curiam)). As to the second element, a complaint must include facts, taken as true, plausibly showing a defendant's use of force "was objectively unreasonable." Hyde v. Bowman, No. 23-10284, 2024 WL 2796506, at *3-4 (11th Cir. May 31, 2024). Courts determine whether this requirement is met by looking at the "totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" Baker v. Madison, Ala., 67 F.4th 1268, 1279 (11th Cir.

2023) (alteration adopted) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)).

Turning first to Count One, this claim "arises from Defendant Espinoza's use of profanity and agitated body language upon his escalated arrival" at the scene of the arrest. Dkt. No. 23 ¶ 82. While Plaintiff claims that Defendant Espinoza "used profanity" around her young nephew and had a demeanor that made her "fear for her person," <u>id.</u> ¶¶ 10, 12, she does not claim Defendant Espinoza touched her or otherwise used *physical force* against her. "[M]ere verbal threats," "harassment," or "verbal taunts," without more, are "insufficient to state a claim for a constitutional violation." <u>Kelsey v. Chase</u>, No. 5:08-CV-284 (CAR), 2009 WL 3188938, at *4 (M.D. Ga. Sept. 30, 2009) (citing <u>Edwards v. Gilbert</u>*,* 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (finding that "verbal taunts" alone are insufficient to state a claim for a constitutional violation); <u>Hernandez v. Fla. Dep't of Corr.</u>, 281 F. App'x 862, 866 (11th Cir. 2008) (affirming dismissal of claims based solely on verbal abuse or threats that were not carried out)). And, while the facts as alleged do suggest that Defendant Espinoza caused harm to Plaintiff's mother, dkt. no. 23 ¶ 20, a Section 1983 claim must be based on harm done to one's own constitutional rights—not harm to another person. <u>See, e.g</u>, <u>Spencer v. King</u>, No. 4:07-CV-00791-PWG, 2008 WL 11446787, at *2 (N.D. Ala. Dec. 2, 2008) ("[I]t is a 'well-settled principle that a section 1983 claim must be based on the

violation of plaintiff's personal rights, and not the rights of someone else.'" (citing <u>Archuleta v. McShan</u>, 897 F.2d 495, 497 (10th Cir. 1990))). Because, even taking the factual allegations as true, Plaintiff has not sufficiently alleged "excessive force" used by Defendant Espinoza, Defendants' motion to dismiss is **GRANTED** as to Count One.

Turning to Count Three, Plaintiff plausibly alleges that Defendant Batten was personally involved in her seizure. Plaintiff claims Defendant Batten "forcefully restrained" her on the front of a vehicle, did so in front of Plaintiff's young nephew, grabbed Plaintiff's hand and wrist with such force that she was left with bruising, threatened to "put [Plaintiff]" in the patrol car if she did not do so willingly, and left Plaintiff with both bruising and scratches from the arrest. Dkt. No. 23 ¶¶ 15–17. Additional allegations make it plausible that this level of force was "objectively unreasonable" by stating that Plaintiff is only five foot two, 110 pounds, and classified as a person with a disability under the ADA—a physical stature that may not require such "forcible restraint." <u>Id.</u> ¶¶ 21, 23. And, albeit in a different count, Plaintiff alleges that she never posed a threat to Defendant Batten or Defendant Espinoza, again making the alleged use of force appear less reasonable. <u>Id.</u> ¶ 98; <u>Torres</u>, 734 F. App'x at 691 (noting that the entirety of a *pro se* complaint should be scrutinized to determine if any cognizable claim can be found

within the four corners of the document (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1286)). Finally, Plaintiff claims that she complied with Defendant Batten "out of fear for her person." Dkt. No. 23 ¶ 20. This suffices to state a plausible claim that Defendant Batten used an objectively unreasonable amount of physical force to seize and arrest a compliant individual who posed no threat to him. Dkt. No. 23 ¶¶ 82–92. Thus, the Court **DENIES** Defendants' motion to dismiss as to Count Three.

### ii. Count Twelve: Fourteenth Amendment Procedural Due Process Claim

In Count Twelve, Plaintiff claims "procedural due process violations under color of law pursuant to 42 U.S.C. § 1983" against Bacon County, the Board, and Defendant Taylor. Dkt. No. 23 ¶¶ 162–72. As a preliminary matter, Plaintiff, in both the title of Count Twelve and its substantive allegations, reiterates that this claim is based on the United States Supreme Court's holding in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). But Monell provides for suits against municipalities rather than individuals. Id. That being so, Plaintiff cannot assert a Monell claim against Defendant Taylor, and, thus, Count Twelve is **DISMISSED** with respect to this defendant. See Foltz v. Largo, No. 8:10-CV-759-T-24-EAJ, 2011 WL 1690010, at *2 (M.D. Fla. May 3, 2011) (bifurcating claims for individual liability from Monell claims against the municipality).

Regarding the remaining two Defendants that may be subject to a Monell claim, Plaintiff must allege three elements: "(1) that [her] constitutional rights were violated; (2) that the municipality has a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing Canton v. Harris, 489 U.S. 378, 388 (1989)). Plaintiff seeks to hold these municipal entities liable for a procedural due process violation under the Fourteenth Amendment, which requires that she plead "deprivation of a constitutionally protected liberty or property interest; state action; and constitutionally inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).

Turning to the purported constitutional violation, Plaintiff alleges that Bacon County and the Board "maintained policies and practices of underfunding and understaffing critical services," despite Defendants' knowledge of persistent "safety concerns" and "acknowledged needs for facility improvements." Dkt. No. 23 ¶¶ 167–68; see also id. ¶¶ 40–51 (describing the conditions Plaintiff faced in the jail). And Plaintiff argues that Bacon County lacks transparency in governance by failing to provide full public access to meeting records or municipal codes, "denying Plaintiff remedies under state law." Id. ¶ 170. Individuals retain "liberty interests in safety and freedom from bodily restraint."

27

_Youngberg v. Romeo_, 457 U.S. 307, 319 (1982). And individuals hold a liberty interest in the ability to "acquire useful information." _Bd. of Regents v. Roth_, 408 U.S. 564, 572 (1972) ("Without doubt, [liberty] denotes . . . the right of an individual . . . to acquire useful knowledge." (internal quotation omitted)). This makes it plausible that Plaintiff suffered a deprivation of a protected liberty interest. _Cryder_, 24 F.3d at 177.

The second amended complaint also sufficiently alleges state action and constitutionally inadequate process, the remaining two elements of a Fourteenth Amendment violation. _Id._ First, as to state action, Plaintiff alleges that Bacon County and its Board denied Plaintiff state law remedies and subjected her to a jail that was run in an unsafe manner. Dkt. No. 23 ¶¶ 162–72. This is sufficient because Georgia's counties and their commissions act as arms of the state. _See_ _Hines v. Etheridge_, 162 S.E. 113, 117 (Ga. 1931) ("[Counties] are local, legal, political subdivisions of the State, created out of its territory, and are arms of the State, created, organized, and existing for civil and political purposes, particularly for the purpose of administering locally the general powers and policies of the State."); _Johnson v. Chatham Cnty._, 306 S.E.2d 310, 312 (Ga. App. 1983)(holding that a lawsuit against county commission was a suit against a political subdivision that was "the same as" an action against the city or county itself). Second, with regard to "inadequate process," Plaintiff has not

identified the *precise* process she believes was due, but she need not do so to state a "plausible" procedural due process violation at this stage. See Smith v. Wayne Cnty., 742 F. Supp. 3d 1350, 1366 (S.D. Ga. 2024) (holding that plaintiff did not need to identify the process due to her in the complaint to surpass a motion to dismiss). Rather, Plaintiff claims that she was denied due process of law when she was not given full information to utilize state law remedies and when she was taken into custody in a jail that was unsafe due to Defendants' "failure to address systemic deficiencies." Dkt. No. 23 ¶¶ 169–71. Defendants have offered no specific argument or authority that would foreclose this theory of recovery. Smith, 742 F. Supp. 3d at 1366. As such, the first element of a Monell claim—that Plaintiff set forth enough factual allegations for a plausible constitutional violation—is met. McDowell, 392 F.3d at 1289.

Turning to the second element of a Monell claim, Plaintiff also plausibly alleges that the purported constitutional violation is attributable to Bacon County and the Board's policies—and provided ample facts to support such an assertion. Id. For example, in Count Twelve itself, Plaintiff speaks to the County and Board's "policies and practices of underfunding and understaffing critical services" such as ABCAS and BCSO, despite concerns about the adequacy of county-run facilities. Dkt. No. 23 ¶ 167. And the Court finds more factual support in the allegations incorporated into

this claim, where Plaintiff outlines Bacon County and the Board's role in creating countywide policies; provides numerous summaries of news reports on Board meetings describing ongoing concerns and multiple rejected efforts to address jail facilities and other alleged deficiencies; and summarizes the operations of Bacon County and the Board, denoted by a separate subheading. Id. ¶¶ 52–81.

Finally, with regard to causation, Plaintiff must demonstrate that the Defendants' action was "taken with 'deliberate indifference' as to its known or obvious consequences." McDowell, 392 F.3d at 1291 (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 398 (1997)). Plaintiff traces Bacon County and the Board's liability to its failure to properly fund and staff the jail. See generally Dkt. No. 23. Plaintiff provides a series of specific considerations from County Board meetings, suggesting that the County and Board knew of the inadequacies at the jail, deliberately decided to implement "work around measures" instead of solving the problem, and time and time again rejected efforts for more funding despite the presentation of a needs assessment and numerous Board concerns about the jail coming to light since its construction in 1993. Dkt. No. 23 ¶¶ 52–81. While this does not dispositively *prove* causation, it does plausibly suggest that these particular budget decisions were "highly likely to inflict the particular injur[ies]" Plaintiff alleges—injury associated with a faulty

jail. <u>McDowell</u>, 392 F.3d at 1292 (quoting <u>Brown</u>, 520 U.S. at 409–10). Accordingly, as it would be premature to dispose of this claim on a motion to dismiss, the Court **DENIES** Defendants' motion to dismiss as to Count Twelve with regard to Bacon County and the Board.

### B. Plaintiff's Remaining Religious Discrimination Claim

In Count Six, Plaintiff asserts a "religious discrimination" claim against Sheriff Batten in his official capacity but does not cite a particular statute or constitutional provision upon which to base her claim. Dkt. No. 23 ¶¶ 124–30. While a court is not *required* to guess the law a plaintiff relies on in asserting a claim, there are sufficient allegations to warrant further discovery. <u>Jones v. Mill</u>, No. 7:15-CV-00661-TMP, 2016 WL 3548810, at *4 (N.D. Ala. June 30, 2016) ("[T]he court is not required to guess at what [law] the plaintiffs may be relying upon."); <u>see also</u> <u>Green v. Dougherty Cnty. Jail</u>, No. 1:23-CV-00061-LAG-TQL, 2023 WL 11996112, at *3 (M.D. Ga. June 27, 2023) (finding prison inmate's "religious discrimination" claim could give rise to either a Section 1983 First Amendment claim or separate Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") claim despite Plaintiff's failure to state a constitutional or statutory basis for his claim in the complaint), <u>report and recommendation adopted</u>, 2023 WL 11996872 (Sept. 12, 2023). More specifically, Plaintiff presents sufficient facts for a plausible First

Amendment claim under 42 U.S.C. § 1983 or a separate claim under the more protective RLUIPA. <u>Green</u>, 2023 WL 11996112, at *3.

Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Incarcerated individuals retain these protections, and jail officials may limit a detained individual's exercise of such beliefs only if "'reasonably related to legitimate penological interests.'" <u>Johnson v. Brown</u>, 581 F. App'x 777, 780 (11th Cir. 2014) (per curiam) (quoting <u>O'Lone v. Est. of Shabazz</u>, 482 U.S. 342, 349 (1987)). Plaintiff alleges that Sheriff Batten did not accommodate different religions at the jail when he provided only one chaplain who was Christian, failed to accommodate those with dietary restrictions due to their religion, offered only Christian religious texts, and allowed only some religious ministers to provide services in the jail while denying others.[9] Dkt. No. 23 ¶¶ 124–30. This, in combination with Plaintiff's allegations that Sheriff Batten was "the Sheriff and 'chief jailer' of Bacon County," makes it plausible that an individual acting under color of state law facilitated a violation of Plaintiff's First Amendment rights.

---

[9] The Court took issue with these factual allegations in its prior Order because Plaintiff made no associated religious discrimination claim to suggest why the facts would be relevant. Dkt. No. 22 at 10. Plaintiff has since remedied that issue by adding a religious discrimination claim to the second amended complaint.

Plaintiff's allegations also give rise to a plausible claim under RLUIPA, which provides for *more* protection than the First Amendment. Green, 2023 WL 11996112, at *3. RLUIPA creates a private cause of action for individuals in "institutions"[10] who "engaged in a religious exercise" which was "substantially burdened" by the government. Smith v. Governor for Ala., 562 F. App'x 806, 813 (11th Cir. 2014) (per curiam) (internal quotation marks omitted). The second amended complaint outlines Plaintiff's failed attempts to obtain accommodating religious text, eat a meal in accordance with her religious preference, and engage with a chaplain who would accommodate her religion. Dkt. No. 23 ¶¶ 124–30. Associated factual allegations make it plausible that these attempts were "substantially burdened" because Plaintiff, who is not Christian, was offered only services and texts related to Christianity, and she was offered meat despite her religion-based conviction not to eat it. Id. Construing these allegations liberally and in Plaintiff's favor at this early stage of litigation, the Court holds that Plaintiff's allegations suffice to warrant further factual development under both Section 1983 and RLUIPA. See Green, 2023 WL 11996112, at *3 (holding the same when faced with a *pro se*

---

[10] A jail, where Plaintiff was detained, qualifies as an "institution" for purposes of RLUIPA coverage. 42 U.S.C. § 2000cc-1 (referring to the definition of "institution" as expressed in 42 U.S.C. § 1997, which explicitly includes "jail[s], prison[s], or other correctional facilit[ies]").

plaintiff asserting similar allegations). As a result, Defendants'
motion to dismiss is **DENIED** as to Count Six.

### C. Plaintiff's Remaining State Law Claims

#### i. Counts Two and Five: Assault and Battery

Plaintiff brings two "Assault and Battery" claims in Counts
Two and Five against Defendant Batten and Defendant Cole. Dkt. No.
23 ¶¶ 93–101. Under Georgia law, an individual's private right of
action for assault and battery is contemplated by O.C.G.A § 51-1-
13. Kemp v. Rouse-Atlanta, Inc., 429 S.E.2d 264, 268 (Ga. Ct. App.
1993). Due to "one's right of inviolability of one's person, any
unlawful touching is a physical injury to the person," triggering
an action for battery. Id. (citing Haile v. Pittman,
389 S.E.2d 564, 566 (Ga. Ct. App. 1989)). An action for assault is
proper where "all the apparent circumstances, reasonably viewed,
are such as to lead a person reasonably to apprehend a violent
injury from the unlawful act of another." Id. (citing Greenfield
v. Colonial Stores, Inc., 139 S.E.2d 403, 405 (Ga. Ct. App. 1964)).
"Any act of physical violence (and the law will not draw a line
between different degrees of violence), inflicted on the person of
another, which is not necessary, is not privileged, and which
constitutes a harmful or offensive contact, constitutes an assault
and battery." Id. (citing Greenfield, 139 S.E.2d at 405).

First, in Count Two, Plaintiff has set forth sufficient facts
to assert a plausible assault and battery claim against Defendant

Batten. Plaintiff alleges that Defendant Batten "physically assaulted" her "by using excessive force" during her arrest—leaving her with bruising and scratches. Dkt. No. 23 ¶ 97. Plaintiff also incorporates into the claim the circumstances surrounding the arrest, including the alleged lack of warrant for Plaintiff's arrest and the level of force used by Defendant Batten when he restrained Plaintiff on the hood of a car. Id. ¶¶ 14–15, 93. Finally, Plaintiff's allegations make it plausible that this "touching" was unlawful. While Plaintiff alleges only that Defendant Levin touched her as a result of the arrest, this is not fatal to her claim at this early stage, especially where she has alleged in the same pleading that the arrest itself involved the unlawful use of excessive force by the same Defendant. Id. ¶¶ 102–14; see also Pittman, 389 S.E.2d at 566 (concluding at the *summary judgment stage*, not the motion to dismiss stage, that arrest-related touching by law enforcement was not unlawful because plaintiff did not dispute probable cause or otherwise prove any use of or threatened excessive force). As a result, Plaintiff has met her burden to sufficiently allege Count Two at this procedural posture.

Second, Count Five should similarly survive Defendants' motion to dismiss. In the facts incorporated into this Count, Plaintiff claims that Defendant Cole "grabbed [her] by one upper arm while shoving her in the middle of her back with great force

out the door of the housing room." Id. ¶ 35. She further avers that this led to "bodily injury resulting in pain and suffering," among other forms of harm. Id. ¶ 122. Because there is no indication in the second amended complaint that this touching was privileged, these facts make it plausible that Defendant Cole committed an assault and battery against Plaintiff. As such, Defendants' motion to dismiss is **DENIED** as to Counts Two and Five.

### ii. Count Four: Interference with Possession of Chattel

Plaintiff, in Count Four, seeks to hold Defendants Batten and Espinoza liable in their official capacities for their alleged attempt to take Plaintiff's cell phone while arresting Plaintiff. Dkt. No. 23 ¶¶ 115–17. Plaintiff avers that Defendant Espinoza attempted to seize her cell phone as she was giving the phone to her mother to continue recording Plaintiff's arrest. Id. ¶ 117. Plaintiff does not offer clarifying details as to the result of these "attempts." Id. ¶¶ 115–17; see also Daughtry v. Manning, No. CV 2:20-005, 2021 WL 1202071, at *4 (S.D. Ga. Mar. 30, 2021) (noting the lack of "clarifying background" in plaintiff's complaint such that this Court could draw the "reasonable inference" that defendants were liable (citing Ashcroft, 556 U.S. at 678)).

More importantly, though, Count Four is not sufficiently pled because Plaintiff does not identify the legal theory upon which she bases her claim, and what is pled gives rise to multiple

differentiable options to fill in the blank. Plaintiff cites O.C.G.A. § 51-10-2, which elevates the confusion rather than solving it. Dkt. No. 23 at 37. The cited statutory provision provides, "Interference with the mere possession of a chattel, even if the possession is without title or is wrongful, shall give a right of action to the possessor, except as against the true owner or the person wrongfully deprived of possession." O.C.G.A. § 51-10-2. However, the causes of action stemming from the statute are "conversion and trover, as well as trespass." Daughtry, 2021 WL 1202071, at *4. While "[t]he action of trespass to personalty is concurrent with the action of . . . conversion," the two causes of action "are not entirely coextensive." Id. (quoting Caldwell v. Church, 802 S.E.2d 835, 841 (Ga. Ct. App. 2017), overruled in part on other grounds, Gen. Motors, LLC v. Buchanan, 874 S.E.2d 52 (Ga. 2022)). "The gist of . . . trespass to personal property is the injury done to the possession of the property." Id. (citing Caldwell, 802 S.E.2d at 841). On the other hand, conversion hinges on a different theoretical basis: the "unauthorized assumption and exercise of the right of ownership over personal property belonging to another." Md. Cas. Ins. Co. v. Welchel, 356 S.E.2d 877, 879 (Ga. 1987). In short, there exist situations that may trigger an action for trespass but not conversion or trover—and vice versa. Id.

Plaintiff does not allege "interference" with property beyond Count Four's label, nor does she mention the word "trespass." Dkt. No. 23 at 115–17. She does not claim damage to the phone itself, nor does she allege that a theft of the phone occurred. Id. Instead, Plaintiff rewords the text of O.C.G.A. § 51–10–2, claims that the Deputies tried to take the phone, and reincorporates prior factual allegations that do not provide any further clarity. Id. As a result, it remains unclear whether Plaintiff is relying on trespass, trover or conversion, or another cause of action. Daughtry, 2021 WL 1202071, at *5 (citing Mill, 2016 WL 3548810, at *4 ("[T]he court is not required to guess at what [law] the plaintiffs may be relying upon.")). If Plaintiff had clarified the cause of action or set forth the elements of any of the possible causes of action with the factual basis for each, the Court may have been able to determine the applicable cause of action and whether each element was properly pled. Id. Because the Court is left with an incomplete narrative despite Plaintiff having filed three complaints in this action, Plaintiff failed to remedy this confusion in response to the present motion to dismiss, and the potential causes of action each have distinct requirements, Defendants' motion is **GRANTED** as to Count Four. See id. (dismissing under similar circumstances).

### iii. Counts Eight and Nine: Negligence

To state a negligence claim under Georgia law, a plaintiff must be able to establish "(1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." Persinger v. Step By Step Infant Dev. Ctr., 560 S.E.2d 333, 335 (Ga. Ct. App. 2002) (quoting Vaughan v. Glymph, 526 S.E.2d 357, 359 (Ga. Ct. App. 1999)). State employees can be subject to such claims when they "negligently perform or fail to perform their 'ministerial functions'" as opposed to discretionary functions. Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994); see also Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d) (codifying public employee liability doctrine in Georgia's Constitution).

Plaintiff, in Counts Eight and Nine, plausibly alleges two state law negligence claims against Defendants Kirkland, Morgan, Taylor, and White. Dkt. No. 23 ¶¶ 139–46. First, regarding a legal duty, Plaintiff describes the public employment of each individual within the second amended complaint, employment which triggers a duty to not carry out one's job in a negligent manner. Dkt. No. 23 ¶¶ 2–4. Plaintiff claims that Kirkland and Morgan breached this duty when they "failed to intervene to stop the [verbal and physical assaults by Defendant Cole], notify a supervisor, or report the incidents for review." Id. ¶ 140. Plaintiff further claims that Defendant Taylor breached his duty to protect Plaintiff's constitutional rights and address systemic concerns

because he allowed a "pattern of violations and documented concerns" to continue without taking appropriate action. Id. ¶ 143. Finally, Plaintiff avers that White, as the EMS and Fire Chief, had a duty to address ongoing safety concerns within his purview but failed to do so. Id. ¶ 144. These state employees' alleged failures to carry out the duties of their public employment resulted in continued safety concerns in the very county jail where Plaintiff claims she experienced both physical and mental injury. Id. ¶¶ 140-41, 145-46. To the extent these actions qualify as "discretionary" acts such that the claims would lack a basis under Georgia's Constitution, the ministerial versus discretionary function inquiry is better suited for a later stage in the litigation process—not a motion to dismiss—because it requires the Court to analyze the level of judgment associated with each employees' duties. See, e.g, Gilbert, 452 S.E.2d at 483-84 (analyzing whether state officials' actions were ministerial versus discretionary at the summary judgment stage). As such, Defendants' motion to dismiss is **DENIED** as to Counts Eight and Nine to allow for further development through the discovery process.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, dkt. no. 24, is **GRANTED in part** and **DENIED in part.** The case shall proceed on the following claims:

- Count Two against Defendant Levin Batten in his individual and official capacity;

- Count Three against Defendant Levin Batten in his official capacity;

- Count Five against Defendant Harvey Cole in his individual and official capacity;

- Count Six against Defendant Andy Batten in his official Capacity;

- Count Eight against Defendants Kevin Kirkland and Amanda Morgan;

- Count Nine against Defendants Shane Taylor and Brent White; and

- Count Twelve against Defendants Bacon County and the Bacon County Board of Commissioners.

The rest of Plaintiff's claims are **DISMISSED**. Further, the following Defendants are **DISMISSED** from the case because there exist no remaining claims against them:[11]

- Hector Espinoza; and

- John Doe(s).

---

[11] The Clerk is **DIRECTED** to terminate Deputy Espinoza, John Doe #1 and John Doe #2 as defendants in this action.

**SO ORDERED** this 24th day of November, 2025.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA